IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STACIE B.,

        **Plaintiff,**

  v.                                      Civil Action 2:23-cv-1411
                                                  Judge Michael H. Watson
                                                  Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Stacie B., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). It is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.**     **BACKGROUND**

This is Plaintiff's second case before the Court. Previously, Plaintiff filed her application for DIB in August 2019 and for SSI in September 2019, alleging that she was disabled beginning January 1, 2018, due to bi-polar disorder, social anxiety, and post-traumatic stress disorder (PTSD). (R. at 393–99, 400–06, 416). After her applications were denied initially and on reconsideration, Administrative Law Judge Nathan Brown ("ALJ") held a hearing on December 9, 2020. (R. at 96–118). Ultimately, the ALJ denied Plaintiff's applications in a written decision on January 13, 2021. (R. at 59–79). The Appeals Council denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision. (R. at 1–9).

Thereafter, on September 16, 2021, Plaintiff appealed to this Court. *See Stacie B. v. Comm'r of Soc. Sec.*, No. 2:21-cv-4650 (S.D. Ohio). And the Court remanded the case to the Commissioner. (R. at 2066–82). After the Appeals Council issued a remand order (R. at 2083–87), another hearing was held on January 26, 2023. (R. at 2015–36). The ALJ again denied Plaintiff's applications for benefits. (R. at 1987–2014).

Plaintiff did not request review by the Appeals Council opting to file suit directly with this Court. (Doc. 1). As required, the Commissioner filed the administrative record, and the matter has been fully briefed. (Docs. 7, 10, 12, 13).

### A. Relevant Hearing Testimony

The ALJ summarized Plaintiff's hearing testimony as follows:

> Psychologically, [Plaintiff] described issues such as being manic and depressed, "flipping out," and having crying spells. She also described issues with panic attacks that prevent her from leaving her house. She reported breaking down when trying to leave her home. She described difficulties with concentration, problems staying focused, and issues finishing a task she starts. She described issues following a television show and becoming aggravated when that occurs. She also described problems sleeping despite using medications. She reported being unable to be around other people.

(R. at 1998).

### B. Relevant Medical Evidence

The ALJ also summarized Plaintiff's medical records and symptoms related to her mental health issues during the relevant period:

> The record demonstrates [Plaintiff] has psychological disorders that have been treated with medications throughout the record. Treatment records indicate [Plaintiff] reported recently started experiencing anxiety and panic attacks when she was in a crowded room in late 2015 leading to prescriptions for medications (6F/38). Records from 2018 reveal [Plaintiff] was diagnosed with anxiety disorder and treated with medications (6F/142). These records reveal she reported increased anxiety and difficulty sleeping when she needed refills on her medications (6F/122). These 2018 records reveal [Plaintiff] was taking buspirone daily and Vistaril as needed, such as when she would get upset, stressed, or panicked (6F/118). Subsequent records reveal she continued taking medications for

> psychological impairments (8F/13). General treatment records reveal essentially normal objective findings. For example, she is described with appropriate mood and affect, normal insight, normal judgment, normal memory, and full orientation (6F/33, 37, 63, 77, 115, 120; 8F/11, 16; 9F/9; 16F/40). Other records contain normal findings such as describing [Plaintiff]'s knowledge and vocabulary as within normal limits or consistent with her education, judgment, and insight as grossly intact, mood as normal, and affect as normal (14F/7, 13, 15, 21).
>
> [Plaintiff] began treatment at Cedar Ridge Behavioral Health Solutions, LLC, in 2018 and continued treatment at this facility throughout the record, as [Plaintiff] described continuing to obtain treatment at this facility (7F; 11F; 13F). [Plaintiff] is treated for major depression, bipolar disorder, social anxiety disorder, amphetamine disorder (e.g., 7F/131). These records contain various mental status examinations, many of which are unremarkable with findings such as a stable mood, an appropriate affect, logical thought process, average intellectual functioning, average insight, average judgement, and being cooperative. However, [Plaintiff] was also sometimes described as guarded and defensive, anxious, and depressed. [Plaintiff] also described issues being around people, difficulties focusing and concentrating, and problems with overwhelming panic attacks (7F/67). The undersigned notes [Plaintiff] denied a history of substance abuse within her treatment records; however, it was noted that she had tested positive for amphetamines, which she described as a false positive, as well as having a prior clinical treatment plan wherein she "wanted to continue living in recovery" but continued to deny a history of substance abuse (11F/23). [Plaintiff]'s general medical records do not indicate [Plaintiff] appeared intoxicated; however, [Plaintiff] was noted to have been seeking opioid medications which her provider declined to prescribe in 2022 (20F/50, 94). The undersigned also notes [Plaintiff] has nicotine dependence and was described as a "heavy smoker" within the record (3F/45; 4F/602; 6F/119; 12F/37, 47; 14F/7).

(R. at 2000–2001).

    C.    **The ALJ's Decision**

The ALJ found that Plaintiff met the insured status requirement through December 31, 2022. (R. at 1993). She has not engaged in substantial gainful employment since January 1, 2018, the alleged onset date. (*Id.*). The ALJ also determined that Plaintiff has the following severe impairments: obesity, degenerative disc disease, left knee osteoarthritis, chronic pain syndrome, generalized anxiety disorder (GAD), bipolar disorder, depressive disorder, social anxiety disorder, substance abuse disorder, and nicotine dependence. (*Id.*). The ALJ, however, found that none of

3

Plaintiff's impairments, either singly or in combination, meets or medically equals a listed impairment. (R. at 1994). The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 404.1567(b) except she can operate foot controls with the left foot frequently. [Plaintiff] can climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds never, balance occasionally, stoop frequently, kneel occasionally, crouch occasionally, and crawl occasionally. [Plaintiff] can work at unprotected heights occasionally, can work around moving mechanical parts occasionally, and can operate a motor vehicle occasionally. She can work in vibration frequently. She is able to perform simple, routine tasks and to make simple, work-related decisions. After the individual's training period, she can interact occasionally with supervisors and coworkers but never with the public, except incidentally. Her work should not require collaborative teamwork, as an essential component of the job. She needs a low-stress work environment defined as no greater than occasional decision-making required, no greater than occasional changes in a routine work setting, and no fast-paced production requirements.

(R. at 1997).

As for the allegations about the intensity, persistence, and limiting effects of Plaintiff's symptoms the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 1998).

The ALJ determined that Plaintiff is unable to perform her past relevant work as a housecleaner. (R. at 2005). The ALJ relied on testimony from a Vocational Expert ("VE") to determine that given Plaintiff's age, education, work experience and RFC, she was able to perform work that existed in significant numbers in the national economy, such as a photocopy machine operators, clerical checker, or laundry folder. (R. at 2005–2006). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since

January 1, 2018.  (R. at 2006).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff argues that the ALJ did not consider the supportability or consistency of the state agency reviewing mental health experts.  (Doc. 10 at 7–10).  As explained below, the Undersigned disagrees.

A [Plaintiff]'s RFC is an assessment of "the most [a claimant can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012).  A [Plaintiff]'s RFC assessment must be based on all the relevant evidence in his or her case file. *Id*.  The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical

5

findings.[1]  20 C.F.R. § 404.1513(a)(1)–(5).  Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the [Plaintiff]'s] medical sources." 20 C.F.R. § 404.1520c(a).  Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).  Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. § 404.1520c(b)(2).  And although an ALJ may discuss how he evaluated the other factors, he is not generally required to do so.  *Id*.  If, however, an ALJ "find[s] that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ will] articulate how [he or she] considered the other most persuasive factors . . . ." § 404.1520c(b)(3).

In evaluating the prior medical administrative findings of the state agency psychologists, the ALJ determined:

> The [ALJ] finds the opinions of Erika Gilyot-Montgomery, Psy.D., not persuasive, and Paul Tangeman, Ph.D., persuasive (1A; 2A; 5A; 6A). These consultants opined [Plaintiff] had severe psychological impairments that warranted work-related limitations. They supported their opinions with a summary of the records available

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (*see* § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 404.1513(a)(2), (5).

6

> at the time of their review. They analyzed the "paragraph B" criteria and concluded that [Plaintiff] had a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation to adapting or managing oneself. Dr. Gilyot-Montgomery opined [Plaintiff] was limited to brief, superficial interaction with others; however, this is not supported either in her analysis or by the record. In fact, [Plaintiff]'s numerous unremarkable mental health findings within general treatment records are inconsistent with this degree of interpersonal limitation (e.g., 6F/33, 37, 63, 77, 115, 120; 8F/11, 16; 9F/9; 16F/40). Dr. Tangeman opined [Plaintiff] could perform simple, 1-2 step tasks; could have occasional contact with co-workers and supervisors and only incidental contact with the public; and could make simple decisions and deal with occasional changes in routine with no fast pace or strict production quotas. These limitations are very similar to the limitations found applicable herein as they are supported by the current record, which includes more than two years of additional treatment records. While there are many normal mental status examinations throughout the records, [Plaintiff] has demonstrated following with mental health treatment, which appears at least partially driven by her parole officer. Similar limitations to Dr. Tangeman's were included based on viewing the evidence in the light most favorable to [Plaintiff]. For example, the undersigned provided more specific interpersonal limitations and "low-stress" limitations to provide vocational clarity as to the types of jobs that would not exacerbate symptoms, such as anxiety and panic.

(R. at 2002).

In December 2019, Dr. Gilyot-Montgomery's completed an initial review of Plaintiff's medical record. (R. at 237–43, 249–55). In April 2020, Dr. Tangeman reviewed the same record on reconsideration as well as medical evidence from early 2020 that didn't exist at the time of the initial review. (R. at 260–67, 269–75). Dr. Gilyot-Montgomery opined that Plaintiff was moderately limited in her ability to interact appropriately with the generally public, her ability to accept instructions and respond appropriately to criticism from supervisions, and her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. at 242–43, 254–55). As the ALJ noted, based on this assessment, Dr. Gilyot-Montgomery opined that Plaintiff "was limited to brief, superficial interaction with others." (R. at 2002, citing R. at 243, 255). Dr. Tangeman found the same social interaction limitations at the reconsideration level

7

but opined that Plaintiff "could have occasional contact with co-workers and supervisors and only incidental contact with the public." (R. at 2002, citing R. at 266, 275). The ALJ considered Dr. Tangeman's opinion more persuasive than Dr. Gilyot-Montgomery and stated generally that Plaintiff's "ability to interact appropriately with various medical personnel, including people with whom she was familiar, as demonstrated by normal mental status examinations, support allowing occasional interaction with supervisors." (R. at 2001, 2002). The ALJ ultimately concluded that after an initial training period, Plaintiff retained the RFC to interact occasionally with supervisors and coworkers but never with the public, except incidentally." (R. at 1997). The ALJ also included a restriction on collaborative teamwork and a requirement of a low-stress work environment. (*Id.*).

    A.    **Supportability and Consistency of the Psychological Consultants' Opinions**

At the outset, the Undersigned notes the inherent lack of clear delineation between supportability and consistency when an ALJ evaluates the opinion of a reviewer—like a state agency psychologist—who forms her opinion after a holistic review of the medical evidence of record. Consider, for example, a case in which there has been little or no change to the medical evidence of record between the time the reviewer issues her finding and the ALJ conducts a hearing. In that instance, the evidence upon which the reviewer supported her finding—the complete medical record at the time of her finding—would be virtually identical to the evidence with which the opinion is consistent or inconsistent—the complete medical record at the time of the ALJ's hearing. The ALJ is left in a position in which she is unable to consider supportability without simultaneously addressing consistency, and vice versa. A plaintiff might semantically allege error in such a case—saying that the ALJ only addressed consistency because she compared the reviewer's opinion to the entirety of the record. But the ALJ would have still fulfilled the purpose of the regulation: to give a fulsome review to medical opinions and prior administrative

8

findings, paying particular attention both to how the opinions are internally supported and explained, and how they compare to the record as a whole.

Contrast this with a medical opinion rendered by a treating physician. There, supportability and consistency are more clearly distinguished. The physician supports (or not) her opinion with her own treatment notes, objective medical findings, and experience with the plaintiff. Her opinion is consistent (or not) with the entire universe of the medical evidence of record.

Other courts in this Circuit have considered this facet of the supportability/consistency framework. In *Vaughn v. Commissioner of Social Security*, the Western District of Tennessee addressed an allegation that an ALJ had not properly assessed the supportability of opinion evidence provided by a physician acting as a "reviewing specialist[ ] . . . ." No. 20-cv-1119-TMP, 2021 U.S. Dist. LEXIS 134907, at *24 (W.D. Tenn. July 20, 2021). The court found that consistency had sufficiently been addressed by the ALJ, because she explicitly detailed why the opinion was inconsistent with other aspects of the record. *Id.* at *25–27. But the ALJ had not meaningfully discussed supportability. *Id.* at *27–32.

Notably, however, the physician based his opinion on other medical records "he reviewed, which completely encompasse[d] the relevant period of discovery." *Id.* at *30–31. In other words, the physician operated in the manner of a state agency reviewer, conducting a holistic review of the medical evidence of record before rendering an opinion. So, the court determined that while the ALJ had not observed 20 C.F.R. § 404.1520c to the letter, she had:

> achieved the regulations' goal of providing notice to [the plaintiff] of why [the physician's] opinion was not persuasive. [The physician]'s opinion was entirely predicated on a review of [the plaintiff]'s medical history and, when recounting that same medical history, the ALJ identified several instances where [the plaintiff]'s medical records did not support a finding of disability. As such, the ALJ's discussion of [the plaintiff]'s medical history is, in essence, a discussion of whether the evidence [the physician] reviewed could actually support his conclusions. Thus, while not being a direct attack on the supportability of [the physician]'s opinion as

9

> contemplated by the regulations, the ALJ's opinion is only one step removed from articulating why she believed the basis for [the physician]'s opinion was faulty, i.e. an explanation of the supportability factor.

*Id.* at *34–35. Accordingly, the court concluded that any error in the assessment of the opinion was harmless and remand was not necessary. *Id.* at *36.

This same harmless-error analysis should apply to an ALJ's decision which clearly discusses the consistency of a state agency reviewer's opinion, when that same opinion was formed upon records which encompassed the relevant period of discovery and the ALJ elsewhere discusses those records in detail.

Here, the Undersigned finds that the ALJ fulfilled his duty to evaluate the state agency psychological consultants' findings. The ALJ evaluated supportability when he compared the consultants' opinions to the record available at the time of their review—a record that was more inclusive of recent medical evidence during the reconsideration stage. Then, the ALJ evaluated consistency when he compared the two opinions against records subsequently created. Based on the record evaluated, the ALJ found Dr. Gilyot-Montgomery's opinion that Plaintiff should be limited to brief and superficial workplace interactions the less persuasive opinion when compared to Dr. Tangeman's opinion that Plaintiff could have occasional workplace interactions with coworkers and supervisors.

In considering supportability, the ALJ stated that Dr. Gilyot-Montgomery's finding that Plaintiff was limited to brief, superficial interaction with others was "not supported either in her analysis or by the record." (R. at 2002). By way of explanation, the ALJ considered the medical evidence that Dr. Gilyot-Montgomery had available to her. (*Id.*; R. at 235–236, 247–248). The ALJ cited to medical records showing Plaintiff's "unremarkable mental health findings . . . inconsistent with [Dr. Gilyot-Montgomery's opined] degree of interpersonal limitation" wherein Plaintiff was reported as having normal psychiatric exam findings, including that Plaintiff was

10

normally oriented, had appropriate mood and affect, normal insight, and normal judgment during evaluations with medical personnel. (R. at 2002, citing R. at 239, 251, 1387, 1391, 1431, 1469, 1474). As the ALJ explained elsewhere in the opinion, the record contained more evidence that Dr. Gilyot-Montgomery reviewed sharing similar sentiments, including reports that Plaintiff was cooperative, demonstrated a stable mood, and had an appropriate affect during various mental status examinations with clinicians. (R. at 2001; *see e.g.,* 1509, 1516, 1524, 1528, 1537, 1544, 1547). And markedly, in her own notes made after reviewing these records, Dr. Gilyot-Montgomery said that Plaintiff's symptoms were "improved and stable with psych medication." (R. at 240, 252). As such, the ALJ reasonably concluded that the records and Dr. Gilyot-Montgomery's notes did not support a limitation to brief and superficial interaction with others in the workplace. (*See* R. at 243, 255).

On the other hand, the ALJ found Tangeman's opinion better supported by the record. (R. at 2002). At the reconsideration level, Dr. Tangeman reviewed all the same medical records that Dr. Gilyot-Montgomery did. (*See* R. at 235–236, 247–248, 260–261, 269–270). So, to the extent that the ALJ already considered those records with respect to the supportability of Dr. Gilyot-Montgomery's opinion, the ALJ considered them with respect to the supportability of Dr. Tangeman's opinion as well. (*See* R. at 2002). But the ALJ also considered medical evidence available to Dr. Tangeman only because the records were submitted after the initial review but before the reconsideration. (*See* R. at 2001; R. at 260–261, 269–270). As Dr. Tangeman made note of, these records included a March 2020 evaluation, completed only a month before Dr. Tangeman's reconsideration, that assessed Plaintiff as cooperative and normally oriented during the medical appointment. (R. at 262, 271, 1509–10). As such, the ALJ could reasonably interpret a supportive connection between these records showing Plaintiff could "interact appropriately with

11

various medical personnel, including people with whom she was familiar, as demonstrated by normal mental status examinations," and Dr. Tangeman's finding that Plaintiff retained the ability to have occasional contact with coworkers and supervisors. (R. at 2001; *see* R. at 262, 271, 266, 275).

Accordingly, the ALJ rationally concluded that Dr. Tangeman's opinion about Plaintiff's social limitations was more persuasive than Dr. Gilyot-Montgomery's, as it was better supported by the totality of the record reviewed and the most recent objective reports that Plaintiff could manage herself and cooperate when interacting with medical personnel on more than a brief and superficial level. (R. at 2002). For that reason, ALJ appropriately considered the supportability of both opinions in concluding that Dr. Tangeman's opinion better reflected Plaintiff's abilities.

Given the discussion above about how supportability and consistency often overlap when an ALJ evaluates the opinions of state agency reviewers, the ALJ's evaluation here of the psychological consultants' opinions when compared to the record they reviewed may satisfy the requirements of the regulations by itself. *See* 20 C.F.R. § 404.1520c(b)(2). But the ALJ did more.

The ALJ bolstered his conclusion that Dr. Tangeman's opinion was more persuasive when he discussed evidence in the record that was created after the consultants formed their opinions. He explained that Dr. Gilyot-Montgomery's opinion was not "supported . . . by the record," but Dr. Tangeman's opined limitations "[were] very similar to the limitations found applicable herein as they are supported by the current record, which includes more than two years of additional treatment records." (R. at 2002). Specifically, the ALJ considered medical evidence created after the consultants reviewed the record where Plaintiff was reported as having normal psychiatric exam findings, including that Plaintiff was normally oriented and had appropriate mood and affect, normal insight, and normal judgment. (R. at 2001, citing R. at 1850, 1862, 1892, 2345, 2351,

12

2353, 5359, 2418). The ALJ also highlighted mental health exams that evaluated Plaintiff as having "a stable mood, an appropriate affect . . . average judgement [*sic*], and being cooperative." (R. at 2001, citing R. at 1948, 1950–51, 1970–71, 1976, 1977, 1984, 1985–86). The ALJ additionally highlighted that Plaintiff was able to follow a mental health treatment plan, as "driven by her parole officer." (R. at 2002; *see e.g.*, R. at 1947, 1970, 1977). It was reasonable for the ALJ to determine that these records reflect Plaintiff's ability at least occasionally to cooperate and act appropriately during interactions with medical personnel and her parole officer on an individual level. As such, the ALJ's decision to prefer Dr. Tangeman's opinion over Dr. Gilyot-Montgomery's opinion was consistent with the record. (*See* R. at 2001).

While the ALJ did not discuss the weight of some of the supporting and consistent evidence in detail when evaluating the state agency psychologists' opinions, he did elsewhere in the opinion. (*See* R. at 2001–02). As explained above, an ALJ's opinion must be read as a whole. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). And ultimately, it is up to the ALJ to determine the weight that each opinion is due. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013). Here, the ALJ did just that. He determined that both the record available to each consultant and the record subsequently developed better supported Dr. Tangeman's conclusion about Plaintiff's social interaction limitations. And, as explained above, the ALJ articulated how he reached this decision. Thus, the ALJ properly evaluated both the supportability and consistency of the consultants' opinions.

Plaintiff might wish "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). But the law prohibits the Court from re-

13

weighing the evidence and substituting its judgment for the ALJ's. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.")). Because the ALJ properly evaluated and discussed the supportability and consistency of the consultants' opinions, the ALJ has satisfied the requirements of the regulations. *See* 20 C.F.R. § 404.1520c(b)(2).

**B.     Collaborative Teamwork**

Finally, to the extent that Plaintiff argues the ALJ did not explain his inclusion of a "superficial type" limitation by restricting Plaintiff from collaborative teamwork in the RFC, the Undersigned disagrees. (*See* Doc. 10 at 10–12). The ALJ found that, in addition to being limited to occasional interactions with supervisors and coworkers (but never with the public except incidentally), Plaintiff's job should not require collaborative teamwork as an essential component of the job. (R. at 1997). Plaintiff says, "[T]here is no explanation of where that opinion came from," so it is impossible to determine whether it has record support. (Doc. 10 at 12). But that is not so. While true that Dr. Tangeman did not include this limitation in his opinion, the ALJ explained that he chose to include such "similar limitations to Dr. Tangeman's" in Plaintiff's RFC after "viewing the evidence in the light most favorable to [Plaintiff]," and to "provide vocational clarity as to the types of jobs that would not exacerbate symptoms, such as anxiety and panic." (R. at 2002). This explanation came after the ALJ considered the state agency psychologists opinions, as discussed above, and reviewed Plaintiff's psychological symptoms at length. (*See* R. at 1997–2002). The ALJ properly built an "accurate and logical bridge" between the evidence and his conclusion that Plaintiff required this additional limitation. *Peters v. Comm'r of Soc. Sec.*, No.

1:19-CV-827, 2021 WL 615234, *4 (S.D. Ohio Feb. 17, 2021) (citing *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011)).

Moreover, even if the ALJ's inclusion of this limitation was not supported by the record as Plaintiff implies could be the case, Plaintiff does not allege how its addition prejudices her. (Doc. 10 at 10–12). Nor did Plaintiff challenge or otherwise elicit testimony about this limitation when it was discussed by the vocational expert at the disability hearing. (R. at 2030–34). It is unclear what a remand on this issue would achieve. *See, e.g.*, *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.")). Said differently, any insufficiency in the ALJ's support for this limitation is harmless.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **DENY** Plaintiff's Statement of Errors (Doc. 10) and **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: November 29, 2023                     /s/ Kimberly A. Jolson
                                            KIMBERLY A. JOLSON
                                            UNITED STATES MAGISTRATE JUDGE